IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON R. BRANNIGAN,<br><br>                Petitioner,<br><br>vs.<br><br>DAVID BAUGHMAN, Warden, California State Prison-Sacramento,[1]<br><br>                Respondent. | No. 2:13-cv-01810-JKS<br><br>MEMORANDUM DECISION |

Jason R. Brannigan, a California state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Brannigan is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison-Sacramento. Respondent has answered, and Brannigan has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 3, 2011, Brannigan was charged with corporal injury of a cohabitant (Count 1); two counts of criminal threats (Counts 2 and 6); false imprisonment (Count 3); two counts of willful harm or injury or endangerment to a child (Counts 4 and 5); and felony vandalism (Count 7). The information alleged as to all counts that Brannigan had been convicted of a prior serious felony and had one prior strike and had served a prior prison term. It further alleged as to Counts 1 through 6 that Brannigan had committed the crimes while on bail and that, as to Count 1, that Brannigan had previously committed assault likely to cause great bodily injury. On direct appeal

---

[1] David Baughman, Warden, California State Prison-Sacramento, is substituted for R.E. Barnes, former Warden, Salinas Valley State Prison. FED. R. CIV. P. 25(c).

of his conviction, the California Court of Appeal recounted the following facts underlying the charges against Brannigan:

> [Brannigan] began to abuse the victim (his girlfriend) a month after he moved in with her and her children. One day in mid–June 2009 they were running errands in her car. [Brannigan] was upset because she talked to another man and became enraged when she would not stop crying. He called her a whore, socked her in the jaw and punched the inside roof of the car, ripping the head liner and popping the sunroof out of its seal.
> On the way home, [Brannigan] "kept driving crazy." He was "weaving in and out of traffic" and driving at excessive speeds. When [Brannigan] turned a corner, the victim heard her car make a "clicking sound" for the first time. After that day, she heard the same clicking sound whenever she drove the car and turned a corner. The car was hard to drive, and it shook on one side when she reached a certain speed.
> When the victim took her car in for repair a month or so later, the mechanic told her the "CV joint was busted." The repair cost more than $500.

*People v. Brannigan*, No. C067460, 2012 WL 1850916, at *1 (Cal. Ct. App. May 22, 2012).

On January 18, 2011, a jury found Brannigan guilty on Counts 1, 2, 3, 6, and 7 and found him guilty on Counts 4 and 5 to the lesser included offense of misdemeanor child endangerment. The jury also found true all the enhancement allegations. The trial court subsequently sentenced Brannigan to an aggregate imprisonment term of 18 years and 8 months and imposed various fines and fees.

Through counsel, Brannigan appealed his conviction, arguing that: 1) the vandalism conviction (Count 7) was not supported by substantial evidence; 2) the $200 court security fee should be reduced to $40; and 3) the abstract of judgment should be corrected to reflect that the trial court imposed the middle term on the making criminal threats conviction (Count 6). Respondent agreed that the abstract of judgment should be corrected but otherwise opposed the appeal. The Court of Appeal unanimously affirmed the judgment against Brannigan in an unpublished, reasoned opinion issued on May 22, 2012. *Brannigan*, 2012 WL 1850916, at *3. Brannigan petitioned the California Supreme Court for review of his claim that the vandalism

conviction was not supported by substantial evidence. The Supreme Court summarily denied the petition for review on August 29, 2012.

On August 30, 2013, Brannigan, proceeding *pro se*, moved in this Court for an extension of time to file a federal petition for a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1)(A). This Court, through a previously-assigned Magistrate Judge, denied the request, noting that it could not extend time when there was presently no action pending before the Court. Docket No. 3. The Court did, however, allow Brannigan 30 days from the date of its order to file a petition and pay the filing fee or apply for in forma pauperis status. *Id.* Brannigan filed his initial petition within 30 days of the Court's order. Docket No. 7. In that initial petition, Brannigan argued that: 1) the jury's verdict that he committed felony vandalism was not supported by sufficient evidence that he acted with malicious intent when the drove the victim's car or that he caused damage to the car; 2) the prosecution failed to disclose evidence favorable to him in violation of *Brady v. Maryland*[2] by failing to disclose a work order form indicating that the victim's car had sustained damage prior to the incident where Brannigan had driven it aggressively; 3-9) trial counsel was ineffective for failing to call as witnesses: a) Parole Agent Crane; b) Sam Frye; c) Samantha Frye; d) Natasha Frye; e) Shawnee Anderson; f) Dr. Bedi; g) Dr. Kaye Nelson; and 10) trial counsel was ineffective for failing to convey a plea offer. Following a Court order, Brannigan moved in this Court to stay the initial petition to raise his unexhausted claims (Claims 2 through 10) in state court.

---

[2] 373 U.S. 83 (1962). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law. *Brady* and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

3

While his motion for a stay in this Court was pending, Brannigan filed a *pro se* petition for habeas relief in the California Supreme Court dated June 23, 2014. In that petition, Brannigan argued that the State failed to disclose evidence favorable to him in violation of *Brady v. Maryland*[3] by failing to disclose the work order form from the victim's car repair as well as testimony made in the Superior Court Family Court Services which he contended was in conflict with the victim's and his ex-wife's testimony. Brannigan additionally argued that trial counsel was ineffective for failing to conduct a reasonable pre-trial investigation; specifically, for failing to obtain the work order form and the impeachment testimony from family court. Finally, Brannigan claimed that his right to confrontation was violated by the introduction of the victim's medical records. The Supreme Court denied the petition without comment on September 10, 2014.

Shortly before the state habeas petition was denied, this Court, through a previously-assigned District Court Judge, denied Brannigan's stay request and directed Brannigan to file an amended petition that included only exhausted claims. Docket No. 31. Brannigan then filed an Amended Petition for a Writ of Habeas Corpus ("Petition," which is the operative pleading in this case) dated October 23, 2014. Docket No. 34. Briefing is now complete, and the case is before the undersigned judge for adjudication.

---

[3] 373 U.S. 83 (1962). *Brady* and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

4

## II. GROUNDS/CLAIMS

In his *pro se* Amended Petition before this Court, Brannigan presents the same 5 claims that he raised in his *pro se* habeas petition filed in the California Supreme Court. He argues that: 1) his conviction for felony vandalism was not supported by sufficient evidence that he acted with malicious intent when the drove the victim's car or that he caused damage to the car; 2) the prosecution committed a *Brady* violation by failing to disclose a work order form indicating that the victim's car had sustained damage prior to the incident where Brannigan had driven it aggressively; 3) the prosecution committed a *Brady* violation by failing to disclose testimony from Family Court that conflicted with the testimony of the victim and his ex-wife; 4) trial counsel failed to conduct a reasonable pre-trial investigation; specifically, for failing to obtain the work order form and the impeachment testimony from family court; 5) the admission of the victim's medical records violated his right to confrontation.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner

6

rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Brannigan has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

A.   Timeliness

As an initial matter, Respondent urges the Court to dismiss a number of claims (Grounds 3, 4, and 5) as untimely. The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

7

28 U.S.C. § 2244(d).

Here, the California Supreme Court summarily denied Brannigan's petition for review on August 29, 2012. Brannigan's case became final for AEDPA purposes when the 90-day window for seeking review in the United States Supreme Court lapsed on November 27, 2012. *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003). Brannigan was accordingly required to file his Petition with this Court no later than November 27, 2013.[4]

As discussed more thoroughly above, Brannigan filed his initial petition in this Court on October 9, 2013, before the expiration of the one-year AEDPA deadline. Docket No. 7. Brannigan subsequently filed the Amended Petition on October 23, 2014, after the one-year AEDPA period has lapsed. Docket No. 34.

The filing of a petition for writ of habeas corpus in federal court does not toll the AEDPA limitations period. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Under Federal Rule of Civil Procedure 15(c), however, a claim raised in a later-amended federal habeas petition may use the filing date of the prior federal petition if that claim "relates back" to a claim in the earlier petition. Relation back is appropriate in habeas cases where the original and amended petitions state claims that are tied to a common core of operative facts. *Mayle v. Felix*, 545 U.S. 664, 650 (2005). The claims raised by amendment must arise from the same core facts as the timely-filed

---

[4] The statute of limitations period may be tolled during the pendency of a properly filed application for state post-conviction relief. *See* 28 U.S.C. § 2244(d)(2). In this case, however, Brannigan's state habeas petition was filed approximately 7 months after the one-year AEDPA period expired. It thus did not "restart" the AEDPA limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that "section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

claims and must depend upon events not separate in "both time and type" from the originally raised episodes. *Id.* at 657.

The United States Supreme Court has provided examples of cases where relation back was appropriate. *See id.* at 664 n.7. For instance, it has found relation-back proper where the original petition alleged discovery violations and "the amended petition alleged the Government's failure to disclose a particular report." *Id.* ("Both pleadings related to evidence obtained at the same time by the same police department" (citing *Mandacina v. United States*, 328 F.3d 995, 1000-01 (8th Cir. 2003)). In contrast, a claim that is "separated in time and type" from the prior claim does not relate back. For example, a petitioner's claim that jury instructions improperly lowered the government's burden of proof did not relate back to a claim that his due process rights were violated by the improper introduction of evidence, since these claims did not share a "common core of operative fact" even though the claims both related to the same proceedings before the jury. *See Hebner v. McGrath*, 543 F.3d 1133, 1138 (9th Cir. 2008). Importantly, the Ninth Circuit has construed the "time and type" language as referring to the facts that support the grounds for relief as opposed to the claims. *See Nyugen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013) ("All of Nyugen's asserted grounds for relief—cruel and unusual punishment, double jeopardy, and appellate-counsel IAC for failing to raise double jeopardy— are supported by a common core of facts.").

In this case, Brannigan raised Ground 1 (insufficiency of the evidence claim) and Ground 2 (*Brady* claim relating to the work order form) in the initial petition, and they are therefore clearly timely. In his amended petition, Brannigan raises an additional *Brady* claim relating to alleged impeachment testimony from Family Court (Ground 3). Because Brannigan did not raise

9

this claim or any claim related to the impeachment testimony in his initial petition, Ground 3 is untimely and is denied on that basis.

Brannigan additionally asserts in his petition an ineffective assistance of counsel claim that faults counsel for failing to obtain the work order form and the impeachment testimony (Ground 4). Although Brannigan raised an ineffective assistance of counsel claim in his initial petition, that claim solely related to counsel's failure to call certain witnesses at trial, which was abandoned in the amended petition. Respondent thus argues that the ineffective assistance claim in the amended petition should be dismissed in its entirety as untimely. The Court agrees with respect to the argument relating to the impeachment testimony (Ground 4b). However, because Brannigan's *Brady* violation claim in the initial petition is supported by the same facts as the corresponding ineffective assistance claim, the Court concludes that Ground 4a relates back to the initial petition and is therefore timely.

Finally, Brannigan claims in his amended petition that his right to confrontation was violated by the admission of the victim's medical records (Ground 5). Because Brannigan did not raise this claim or any claim related to the medical records in his initial petition, Ground 5 is untimely and is denied on that basis as well.

B. <u>Merits of Timely Claims</u>

    1. *Insufficiency of the Evidence* (Ground 1)

Brannigan first argues that the evidence presented is legally insufficient to sustain his conviction for felony vandalism. Specifically, Brannigan contends that there was insufficient evidence that he acted with malicious intent when he drove the victim's car or that he caused damage to the car.

10

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory

11

authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 3-4. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

In addressing Brannigan's claim on direct appeal, the Court of Appeal laid out the elements of felony vandalism as follows:

> A person who maliciously causes damage to the real or personal property of another is guilty of vandalism. (§ 594, subds.(a), (b)(1); *see also In re Leanna W.* (2004) 120 Cal. App. 4th 735, 743.) The word " 'maliciously' import [s] a wish to vex, annoy, or injure another person, or an intent to do a wrongful act . . . ." (§ 7, subd. 4.).

Brannigan, 2012 WL 1850916, at *2.

In support of his claim, Brannigan argues that the "erratic manner of his driving was done to avoid other cars, rather than to vex, injure, or annoy" the victim and that there was insufficient

12

evidence that the victim's car was damaged by Brannigan's driving and not a pre-existing problem. But this argument simply points out inconsistencies and shortcomings in the evidence before the jury; the defense presented these arguments to the jury for its assessment. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *Schlup v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004). As the Court of Appeal reasonably concluded:

> It is enough that a reasonable jury could have concluded from the circumstantial evidence [Brannigan] intentionally drove so as to vex or annoy the victim, or to damage her car. (§ 7, subd. 4.) The victim testified that moments before she first heard the sound indicating damage to her car, [Brannigan] threw the car keys at her, yelled at her and belittled her, hit her in the face, punched the roof of her car and drove her car erratically. Based on this evidence, the jury could reasonably conclude [Brannigan] intended to vex or annoy the victim and intended to cause damage to her car. There was ample evidence to support the jury's implicit finding [Brannigan] acted maliciously.
> Substantial evidence also supports the inference that [Brannigan] caused damage to the car in an amount over $400. After [Brannigan] drove the victim's car erratically and at excessive speed, the victim heard for the first time a clicking sound when the car turned a corner. The car became difficult to drive and shook on one side when the victim reached a certain speed. Repairs to the car would cost over $500. The jury could reasonably conclude from the evidence that [Brannigan's] driving caused the damage to the victim's car and that the damage was over $400.

*Brannigan*, 2012 WL 1850916, at *2.

Although it might have been possible to draw a different inference from the totality of the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Thus, considering the deference owed under *Jackson*, *Cavazos*, and the AEDPA, and for the reasons persuasively explained by the Court of Appeal, this Court concludes that there was sufficient evidence of malicious intent and actual damage introduced at trial from which a rational trier of fact could have found beyond a reasonable doubt that

13

Brannigan was guilty of felony vandalism. Brannigan is therefore not entitled to relief on his insufficiency of the evidence claim.

2. *Brady Violation* (Ground 2)

Brannigan next argues that the prosecution wrongfully withheld an exculpatory vehicle repair estimate that would prove that the identified problems with the car were pre-existing and not the result of Brannigan's driving. The record indicates that, on January 4, 2011, the prosecution marked as an exhibit a work order form dated October 24, 2008, prior to when Brannigan drove the victim's car in June 2009. The prosecution withdrew the exhibit, without comment, on January 11, 2011. One week later, the jury's verdict was rendered.

"[T]he Constitution does not require the prosecutor to share all useful information with the defendant." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (citing *Weatherford v. Bursey*, 429 U.S. 545, 549 (1977) ("There is no general constitutional right to discovery in a criminal case."). *Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching," *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Strickler*, 527 U.S. at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Brannigan cannot show a *Brady* violation here. First, Brannigan fails to show that the evidence was suppressed because, as he acknowledges, the prosecution entered it as an exhibit.

To the extent that Brannigan bases his *Brady* claim on a theory of delayed disclosure, the Ninth Circuit has held that evidence disclosed to the defense even as late as trial does not violate *Brady* so long as the disclosure was "made at a time when disclosure would be of value to the accused." *United States v. Gordon*, 844 F.3d 1397, 1403 (9th Cir. 1988) (quoting *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985)). Brannigan does not allege in his Petition that his defense was prejudiced by the timing of the disclosure.

He also cannot show prejudice because the evidence in question was not exculpatory. Although he contends in his Petition that the "damages [the victim] attributes to petition previously existed" since the date of the work order form, he provides no support or other evidence that would link the repair issues identified in the work order repair form to the problems that the victim identified after the incident. *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief."). Rather, the victim testified that, after the incident, the car began to make a "'clicking sound' for the first time" and became "hard to drive, and it shook on one side when she reached a certain speed." *Brannigan*, 2012 WL 1850916, at *2. She further testified that it cost her more than $500 when she took her car in for repair about a month or so later.[5] *Id.* Brannigan thus fails to demonstrate that the evidence was suppressed or material and consequently cannot prevail on his *Brady* claim.

---

[5] The victim also testified that, although Brannigan punched the roof of the car and popped the window out of the ceiling, she could not afford to get that fixed, and the damage to the sunroof was therefore not included in the $500 repair cost. It is conceivable that the damage to the sunroof may have independently been greater than the $400 threshold required by the statute.

3. *Ineffective Assistance of Counsel* (Ground 4a)

Brannigan likewise alleges that counsel failed to conduct a reasonable pre-trial investigation because he did not obtain the work order form. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[6] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

---

[6] *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Brannigan must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Brannigan fails to satisfy either prong. As previously discussed, because the evidence was entered as an exhibit, Brannigan fails to show that counsel failed to obtain the work order form. And for the reasons discussed above, Brannigan similarly does not show that he was prejudiced by counsel's failure to obtain the work order form earlier. To the extent Brannigan's ineffective assistance claim may be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), to additionally argue that counsel was ineffective for failing to enter the exhibit for the defense after it was withdrawn by the prosecution, Brannigan cannot prevail on that claim either. At trial, defense counsel argued that it was unlikely that the extreme car problems identified during the victim's testimony could be caused by a single incident of erratic driving. As forementioned, the victim testified that the problems began only after Brannigan drove the car in that manner. The jury apparently found the victim's testimony credible. Because, as discussed above, there was no evidence linking the issues identified in the work order form with the car troubles highlighted in the victim's testimony, and Brannigan does not

17

specifically identify evidence that counsel should have found that would have made such link, counsel cannot be deemed ineffective for not entering the work order form as a defense exhibit, and there was no reasonable probability that the admission of the work order form would have led to a different result. Brannigan is therefore not entitled to relief on this ground.

B.	Request for an Evidentiary Hearing

Brannigan further requests an evidentiary hearing on all of his claims. A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963). *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005). In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material

18

facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

As discussed above, Brannigan has failed to assert a colorable claim for relief. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record). Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts with respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Brannigan's request for an evidentiary hearing must therefore also be denied.

## V. CONCLUSION AND ORDER

Brannigan is not entitled to relief on any ground raised in his Petition and is not entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 6, 2017.

 /s/James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge